1  **WO**

2

3

4

5

6                        IN THE UNITED STATES DISTRICT COURT

7                          FOR THE DISTRICT OF ARIZONA

8

9   Equal Employment Opportunity          )   No. CV 04-2060 PCT-DGC
    Commission,                            )
10                                         )
                Plaintiff,                 )
11                                         )   **ORDER**
    vs.                                    )
12                                         )
    Winslow Memorial Hospital, Inc., an    )
13  Arizona corporation,                   )
                                           )
14              Defendant.                 )
    _____   )

15

16          Pending before the Court is Defendant's motion for summary judgment.  Doc. #70.

17  For the reasons stated below, Defendant's motion will be granted.[1]

18  **I.     Background.**

19          Ella Mae Renfro, born in 1943, and Gloria Warren, born in 1947, are both African-

20  American females.  Doc. #75.  Ross Black is a white male and younger than Mses. Renfro

21  and Warren.  Doc. #71.  Defendant Winslow Memorial Hospital, Inc. ("Winslow Hospital")

22  employed Ms. Renfro, Ms. Warren, and Mr. Black as supervisors of its support staff services

23  departments.  Docs. ##71, 77.

24

25

26  _____

27  [1] The Court will deny the request for oral argument because the parties have submitted
    memoranda thoroughly discussing the law and evidence and the Court concludes that oral
28  argument will not aid its decisional process.  *See Mahon v. Credit Bur. of Placer County,
    Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

1    On July 10, 2003, Jeffrey Hamblen, CEO of Winslow Hospital, informed Ms. Renfro,

2    Ms. Warren, and Mr. Black that the three departments they supervised – Housekeeping and

3    Laundry, Food Services, and Maintenance, respectively – were being combined into a single

4    department, Hotel Services.  Docs. ##70, 77.  The practical effect of this consolidation was

5    that their three positions were being eliminated and a single position, Director of Hotel

6    Services ("DHS"), was being created.  *Id.*

7    At the meeting, Mr. Hamblen provided a job description for the DHS position and

8    stated that it would be filled internally.  *Id.*  Mses. Renfro and Warren did not apply and, in

9    accordance with the reorganization, were terminated on August 2, 2003.  Docs. ##70, 75.

10   Mr. Black, the only candidate who did apply, was hired and assumed his new role as DHS

11   on August 3, 2003.  Doc. #70.

12   On August 19, 2003, Ms. Renfro applied for disability insurance benefits from the

13   Social Security Administration ("SSA").  Doc. #75, Ex. 14.  On her application for Social

14   Security Disability Insurance ("SSDI"), she stated that she was unable to work as a result of

15   a disabling physical condition.  *Id.*  The SSA ultimately determined that Ms. Renfro was

16   disabled as of August 1, 2003, and entitled to disability insurance benefits.  Doc. #75, Ex. 43.

17   On August 27, 2003, and September 10, 2003, respectively, Ms. Renfro and Ms.

18   Warren filed charges of discrimination with the Equal Employment Opportunity Commission

19   ("EEOC").  Doc. #71, Exs. 28, 29.  On September 30, 2004, the EEOC filed a complaint

20   against Defendant, alleging that Mses. Renfro and Warren were discriminated against on the

21   basis of their race, sex, and/or age.  Doc. #1.  The EEOC specifically contends that

22   Defendant (1) failed to consider Mses. Renfro and Warren for the DHS position and

23   (2) terminated them in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"),

24   Title I of the Civil Rights Act of 1991, and the Age Discrimination in Employment Act

25   ("ADEA").[2]  *Id.*

26

27   ──────────────

28   [2]  The Court previously granted the parties' stipulated request to dismiss the EEOC's claim
     entitled "Failure to File EEO-1 Reports."  Docs. ##19, 20.

On February 15, 2005, Defendant filed an amended answer to the EEOC's complaint, denying that it engaged in any discriminatory conduct with respect to Mses. Renfro and Warren. Doc. #22. In moving for summary judgment, Defendant argues that the EEOC has not created a genuine issue of material fact for trial and that Ms. Renfro should be judicially estopped from establishing a case of discrimination against Defendant on account of her application for SSDI. Doc. #70.

**II.    Summary Judgment Standard.**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "Only disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The disputed evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Summary judgment may be entered against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.[3]

**III.    Discussion.**

**A.    Failure to Consider for Hire.**

The parties agree that the proper legal framework for establishing a *prima facie* case of employment discrimination is that of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See also Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027 (9th Cir. 2005). Docs. ##70, 77. Accordingly, the EEOC must show (1) Mses. Renfro and Warren belong

---

[3] The EEOC's having found evidence of pretext (Doc. #71, Exs. 32, 33) does not impact the Court's analysis of the existence of genuine issues of material fact. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271 (9th Cir. 2000) ("If the EEOC's suing is insufficient to create a genuine issue of material fact, then, a priori, a conclusory EEOC reasonable cause letter, at least by itself, does not create an issue of material fact.").

1    to a protected class, (2) they applied for and were qualified for the position they were denied,
2    (3) they were rejected despite their qualifications, and (4) Winslow Hospital filled the
3    position in question with an employee not of their class. *Dominguez-Curry*, 424 F.3d at 1037
4    (citing *McDonnell Douglas,* 411 U.S. at 802).

5        Defendant argues that a *prima face* case cannot be made because Mses. Renfro and
6    Warren did not apply for the DHS position and were not precluded from applying by any
7    discriminatory intent or conduct attributable to the hospital. Doc. #70. The EEOC admits
8    that Mses. Renfro and Warren did not apply, but argues that they did not do so because "each
9    [was] convinced of the futility of their application[.]" Doc. #77 at 9. In particular, the EEOC
10   alleges that Defendant's discriminatory practices deterred Mses. Renfro and Warren from
11   applying, and that "they would have been rejected had they applied." *Id.* at 13.

12       Nonapplicants are not automatically barred from seeking relief under Title VII for a
13   failure to promote, but these plaintiffs face the "difficult task of proving that they should be
14   treated as applicants and therefore are presumptively entitled to relief accordingly." *Int'l*
15   *Bhd. of Teamsters v. U.S.*, 431 U.S. 324, 364 (1977). To accomplish this task, a non-
16   applicant must show "that he would have applied but for discrimination and that he would
17   have been discriminatorily rejected had he applied." *Id.* at 368 n. 52.

18                        **1.    Deterred from Applying.**

19       The EEOC offers three arguments in support of its contention that Mses. Renfro and
20   Warren would have applied for the DHS position but for Defendant's discriminatory actions.

21       First, the EEOC contends that the job announcement provided by Mr. Hamblen
22   overemphasized certain physical demands. The one-page announcement described the goals
23   and management responsibilities of the position, including staffing, budgeting, regulatory
24   compliance and policy development. The last paragraph included this language:

25       [F]requent standing, walking, lifting carrying [sic], pushing, pulling (50
         pounds or more), use of sight, exposure to high and low temperatures, wet,
26       high humidity; occasional sitting, climbing, kneeling, use of speech and
         hearing, mechanical, electrical, or burn hazards, fumes, odors, dusts, smoke,
27       gases[.]

28

1  Doc. #75, Ex. 26.  The EEOC contends that this paragraph effectively communicated to
2  Mses. Renfro and Warren that they should not apply:  "the discriminatory job requirements
3  were created and the statements were made with the intent of discouraging two specific
4  applicants from applying."  Doc. #77 at 9.  Citing to *Dothard v. Rawlinson*, 433 U.S. 321
5  (1977), the EEOC claims that this situation is analogous to one in which "an applicant for
6  a position as a correctional officer might be deterred by height and weight standards that
7  appear neutral but disproportionately impact women."  *Id*.

8      In *Dothard*, the Supreme Court noted that if the job requirements are shown to be
9  "discriminatory in effect," the employer may prove that the "challenged requirements are job
10  related."  433 U.S. at 329.  Here, the Housekeeping and Laundry, Food Services, and
11  Maintenance departments were combined into the Hotel Services department.  The DHS
12  position thus necessarily included responsibilities associated with each of the three
13  consolidated positions, some of which were physical in nature.  Doc. #79.  For example, the
14  job description for Director of Housekeeping and Laundry (the position held by Ms. Renfro)
15  included the following under "Physical Demands and Working Conditions":

16      Work may be heavy, involving lifting and carrying supplies, equipment and
       materials weighing up to 50 pounds. Stoops, kneels, and crouches to sweep
17      floors, pick up waste and litter, and polish fixtures and fittings. Involves
       extensive standing and walking.
18

19  Doc. #75, Ex. 41.  Indeed, Ms. Renfro herself approved this job description the day before
20  the July 10 meeting in which Mr. Hamblen announced the consolidation plan.  *Id*.  Thus,
21  there can be no doubt that the requirements were job related.

22      If the employer establishes that the "challenged requirements are job related," the
23  plaintiff must then show that alternative job requirements without discriminatory effect
24  would serve the employer's interests.  *Dothard*, 433 U.S. at 329 (quoting *Albemarle Paper*
25  *Co. v. Moody*, 422 U.S. 405, 425 (quoting *McDonnell Douglas*, 411 U.S. at 801)).  The
26  EEOC has offered no such nondiscriminatory alternatives.

27      Because the physical components of the DHS job description were job related and the
28  EEOC has not offered any alternative job requirements that would lack discriminatory effect,

1  the EEOC cannot rely on the DHS job description as a discriminatory deterrent to Mses.

2  Renfro and Warren's application for the position. *Id.*

3      Moreover, the Court is not persuaded that the DHS job description was even

4  discriminatory in effect – the initial requirement under *Dothard*.  The fact that Mses. Renfro

5  and Warren were personally familiar with the demands of their own positions, and that Ms.

6  Renfro recently had approved a similar physical-demands description for her own job,

7  strongly suggests that it was not the physical job description that deterred them from

8  applying.  Indeed, Ms. Warren testified that Mr. Hamblen explained that the DHS position

9  would be managerial in nature (Doc. #79, Ex. A at 89-99), testimony that further undercuts

10  the EEOC's argument that the physical job description had the discriminatory effect of

11  deterring the female applicants.

12      Second, the EEOC argues that Mr. Hamblen did not encourage Mses. Renfro and

13  Warren to apply, and instead said only that they "could apply for the job 'if *they* felt qualified

14  for it.'"  Doc. #77 at 10 (emphasis in original).  The EEOC italicizes the word "they" in this

15  statement as though Mr. Hamblen also placed an emphasis on that word and thereby implied

16  that the women were not qualified.  But this characterization of Mr. Hamblen's statement is

17  not supported by the deposition pages cited by the EEOC.  The Court's review of Mr.

18  Hamblen's testimony reveals that he "encouraged all three of them to look at it and to

19  consider applying for the job." Doc. #75, Ex. 12 at 70.  Mr. Hamblen's statement to the three

20  supervisors that they would each have to decide whether to apply for the DHS position is not

21  indicative of an attempt to discourage two of them from applying.

22      Third, the EEOC claims that Mr. Hamblen met privately with Mr. Black after the July

23  10 meeting, a fact which suggested to Mses. Renfro and Warren that Mr. Black had been

24  "preselected" for the DHS position.  Doc. #77.  But the only evidence cited by the parties

25  concerning this meeting shows that it had nothing to do with the DHS position.  Doc. #79,

26  Ex. C at 70-71, Ex. D. at 31-33.  After Mr. Hamblen met with Mr. Black, Ms. Warren

27  testified that she told Mr. Black that she felt Mr. Hamblen was attempting to "get rid" of her

28  and Ms. Renfro without making it appear discriminatory.  Doc. #75, Ex. 1.  Ms. Warren

1    testified that Mr. Black responded, "It pretty much looks that way. Yes, it do pretty much
2    look that way, Gloria. But I don't know what to tell you. I don't know why Mr. Hamblen
3    was wanting to get rid of you." *Id.*

4        This statement does not say anything about the Hamblen-Black meeting, and Mr.
5    Black specifically stated that he did not know why Mr. Hamblen was taking these steps.
6    Moreover, the statement was made by a co-worker and is not tantamount to a statement by
7    Mr. Hamblin or Defendant. Thus, the statement cannot reasonably be viewed as an act of
8    Defendant to discourage Mses. Renfro and Warren from applying.

9        The EEOC would have the Court engage in a series of suppositions for which there
10   is no evidence: that the Hamblen-Black meeting concerned the DHS position, that Mr.
11   Hamblen indicated during the meeting that Mr. Black would get the position, and that Mr.
12   Black's comment to Ms. Warren reflected this private knowledge. The Court is required to
13   draw reasonable inferences in the EEOC's favor when ruling on the Defendant's motion for
14   summary judgment, but such inferences do not include suppositions unsupported by the
15   evidence. *See Allen v. Scribner*, 812 F.2d 426, 438-39 (9th Cir. 1987). At most, it appears
16   that Mr. Black was confirming his perception of an appearance of intentional termination –
17   that Mr. Hamblen's elimination of Ms. Renfro's and Ms. Warren's position "looked" like he
18   was trying to terminate them. That perception by a co-worker is not enough, standing alone,
19   to satisfy the "difficult task" of proving that Defendant's discrimination prevented Mses.
20   Renfro and Warren from applying for the job. *Int'l Bhd. of Teamsters*, 431 U.S. at 364.

21       Morever, even if the Court accepts for purposes of summary judgment that Mr. Black
22   was preselected and that he believed Mses. Renfro and Warren were being terminated, the
23   EEOC has failed to establish a discriminatory basis for the alleged preselection (i.e., age, sex,
24   and/or race) that is attributable to Mr. Hamblen. *See Goostree v. States of Tenn.,* 796 F.2d
25   854, 862 (6th Cir.1986) ("We agree with Goostree that the evidence clearly suggests that Van
26   Meter was preselected[.] However, there is little evidence from which to conclude that sex
27   was the basis for this preferential treatment."), *cert. denied*, 480 U.S. 918 (1987).

28

1    In summary, the EEOC has failed to produce sufficient evidence from which a

2    reasonable jury could conclude that Mses. Renfro and Warren were deterred from applying

3    by Defendant's discriminatory actions.  The EEOC therefore cannot satisfy the first part of

4    the *Int'l Bhd. of Teamsters* test – that the women would have applied for the DHS position

5    but for Defendant's discrimination.  431 U.S. at 368 n. 52.

6    **2.    Mses. Renfro and Warren Would Have Been Rejected.**

7    The EEOC must also show that Mses. Renfro and Warren would have been rejected

8    had they applied.  *Id.*  The EEOC argues that the "same evidence supporting a finding of

9    pretext with respect to Renfro's and Warren's termination claims also supports a finding that

10   they would have been rejected had they applied."  Doc. #77 at 13.  For the reasons set forth

11   below, the Court does not find that the EEOC has created a question of fact on this issue.

12   **B.    Termination.**

13   To establish a *prima facie* case under the termination claim, the EEOC must

14   demonstrate that Mses. Renfro and Warren were (1) members of a protected class,

15   (2) performing their jobs satisfactorily, (3) terminated, and (4) replaced with an employee or

16   employees not of their class with equal or inferior qualifications.  *Coleman v. Quaker Oats*

17   *Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000) (citing *Nidds v. Schindler Elevator Corp.,* 113 F.3d

18   912, 917 (9th Cir. 1997)).  "If [a plaintiff] succeeds in establishing a *prima facie* case, the

19   burden of production shifts to [the employer] to articulate a legitimate, nondiscriminatory

20   reason for terminating [the plaintiff's] employment."  *Aragon v. Republic Silver State*

21   *Disposal Inc.*, 292 F.3d 654, 658 (9th Cir. 2002) (citing *McDonnell Douglas*, 411 U.S. at

22   802).  If the employer articulates a nondiscriminatory reason, the plaintiff must then produce

23   evidence that the reason was pretextual.  *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220

24   (9th Cir. 1998) (citing *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994)).  To

25   establish pretext with indirect evidence, a plaintiff must show that "the employer's proffered

26   explanation is unworthy of credence."  *Chuang v. Univ. of California Davis, Bd. of Trustees*,

27   225 F.3d 1115, 1124 (9th Cir. 2000) (quoting *Texas Dep't of Cmty Affairs v. Burdine,* 450

28   U.S. 248, 256 (1981)).  Such indirect evidence "must be both 'specific' and 'substantial' in

1   order to create a triable issue with respect to whether the employer intended to discriminate."

2   *Godwin*, 150 F.3d at 1222 (internal citations omitted).

3       Assuming, without deciding, that the EEOC can establish a *prima facie* case, Winslow

4   Hospital must offer a legitimate, nondiscriminatory explanation for the termination of Mses.

5   Renfro and Warren's positions.  Defendant argues that the decision to consolidate the three

6   directorships was "grounded solely in Mr. Hamblen's mission to reduce expenses and

7   improve the Hospital's finances, which were by all accounts, in total disarray."  Doc. #70 at

8   12.  Generally, a reduction in force constitutes a legitimate, nondiscriminatory reason for

9   terminating an employee.  *Winarto v. Toshiba Am. Elec. Components, Inc.,* 274 F.3d 1276,

10  1295 (9th Cir. 2001).

11      The EEOC offers no direct evidence of pretext.  The EEOC must therefore provide

12  specific and substantial indirect evidence of pretext if it is to avoid summary judgment.

13  *Godwin*, 150 F.3d at 1222.

14      The Court notes at the outset of this analysis that a single fact weighs heavily against

15  the EEOC's position:  Mr. Black was terminated as a support staff director along with Mses.

16  Renfro and Warren.  Thus, the action taken against these women was simultaneously taken

17  against a younger white male, strongly suggesting that age, gender, and race were not the

18  motivating reasons for the consolidation.  Although Mr. Black applied and was hired for the

19  new DHS position, Mses. Renfro and Black never applied, and the Court has concluded

20  above that the EEOC has not created a triable issue of fact on whether their failure to apply

21  was itself the result of discrimination.  These circumstances must be considered when

22  deciding whether the EEOC has presented specific and substantial evidence from which a

23  jury could reasonably conclude that Defendant's explanation for its action was a pretext for

24  discrimination.

25      The EEOC contends that Defendant's "asserted rationale, a [reduction in force]

26  designed to save [the hospital] money, is a pretext for discrimination."  Doc. #77 at 1.  In

27  particular, the EEOC argues that subsequent decisions by Mr. Hamblen demonstrate that he

28

1    was not interested in the hospital's economic situation when he decided to terminate Mses.

2    Renfro and Warren.  Doc. #77.

3        First, the EEOC argues that Defendant attempted to replace Ms. Warren with Donna

4    Stubblefield, a younger Hispanic female.  Docs. ##75, 77.  Ms. Warren was terminated on

5    August 2, 2003, and Defendant offered a position with similar duties to Ms. Stubblefield on

6    September 24, 2003.  Doc. #75.  The parties do not dispute, however, that a significant

7    intervening event took place: on September 12, 2003, the Arizona Department of Health

8    Services ("ADHS") informed Defendant that it must have a qualified full-time director of

9    dietary and food services on staff.  Docs. ##75, 79.  If Defendant did not comply, the ADHS

10   stated that it would recommend that the hospital's participation in the Medicare program be

11   terminated.  Doc. #75, Ex. 33.

12       The EEOC claims that the hospital's "failure to reemploy Warren even when it

13   learned that it could not eliminate her managerial role is indicative that financial savings

14   were not its true motive" in terminating Ms. Warren.  Doc. #77 at 5.  In effect, the EEOC is

15   arguing that Defendant's failure to seek out and rehire Ms. Warren in response to the ADHS

16   mandate shows that its economic justification for eliminating her position in the first place

17   was pretextual.

18       This is a non-sequitur.  The fact that Defendant was forced to hire a new employee

19   in response to an ADHS order says nothing about whether the previous position was

20   eliminated for economic reasons.  The ADHS mandate required Defendant to hire a director

21   of dietary and food services regardless of Defendant's economic concerns.  Nor does the

22   hospital's failure to seek out and hire Ms. Warren in response to the ADHS order show that

23   the economic justification for eliminating her previous position was a ruse.

24       Second, the EEOC contends that, subsequent to the termination of Mses. Renfro and

25   Warren, Defendant hired several other employees leading to an "increase in net employees"

26   in the housekeeping, food services, and maintenance areas.  Doc. #77 at 6.  Plaintiff claims

27   that any gains realized by the consolidation were lost by Defendant's hiring of these new

28

1    employees, thus demonstrating that Defendant's articulated economic interest was pretextual.

2    *Id.*

3         Mr. Black, the DHS and supervisor of all support staff services, testified that while

4    employees were hired after the terminations, there has been no net increase in employees in

5    the original departments.  According to Mr. Black's deposition, there were seven employees

6    in housekeeping, eight employees in food services, and five employees in maintenance both

7    before and after August 2003.  Doc. #75, Ex. 5 at 114-117.

8         Of the subsequent hires, three have limited probative value as to whether Defendant's

9    financial concerns were pretextual.  Ms. Stubblefield joined Winslow Hospital as a dietician

10   in response to an ADHS mandate.  Doc. #75, Ex. 5.  And two of the subsequent positions

11   were advertised and filled in March of 2004, some eight months after Mses. Renfro and

12   Warren were terminated.  Docs. #75, 77.  This lapse of time diminishes the probative value

13   of these hirings.  The EEOC has presented no evidence to suggest that financial conditions

14   at the hospital were the same in March of 2004 as they were when Mses. Renfro and Warren

15   were terminated.

16        The newly formed hotel services department did experience an increase of two

17   employees: Mr. Black and his personal secretary.  Doc. #75, Ex. 5. at 117.  The secretary was

18   hired in March 2004 (Doc. #77), diminishing the probative value of her hiring.  The

19   remaining hire, that of Mr. Black, cannot establish that the hospital's economic justification

20   was a subterfuge for discrimination.  He filled the position created by the consolidation of

21   three previous supervisor positions.

22        In summary, the flux of employees failed to result in a net increase of employees in

23   the original departments, and several of the relevant hires coming into the hospital –

24   including Ms. Stubblefield, Mr. Black's personal secretary, and Mr. Black himself – are not

25   meaningful indicators of pretext.  The plaintiff's indirect evidence of discriminatory intent

26   must be specific and substantial.  *Godwin*, 150 F.3d at 1222.  The Court finds that this

27   evidence of subsequent hiring of employees does not meet this standard.

28

1    The EEOC next argues that Defendant has increased wages by providing employees,

2    including Mr. Hamblen, with pay raises.  Doc. #77.  This, according to the EEOC, undercuts

3    Defendant's articulated economic justification for terminating Mses. Renfro and Warren.

4    *Id*.   The EEOC admits, however, that these wage increases were provided "to bring

5    [employees'] salaries close to a market level."  *Id.* at 8.  A defendant's admitted compliance

6    with market economic realities cannot be characterized as specific and substantial evidence

7    that the economic justifications are pretextual.

8    Because the EEOC has failed to produce specific and substantial evidence that the

9    legitimate, nondiscriminatory reason articulated by Defendant is pretextual, summary

10   judgment must be entered against it.

11        **C.     Judicial Estoppel.**

12        Defendant argues that Ms. Renfro should be judicially estopped from claiming that

13   she was discriminated against by Defendant because she applied for and received social

14   security disability benefits.  Doc. #70.  In particular, Defendant argues that Ms. Renfro's

15   statement on her SSA application that she was "unable to work because of my disabling

16   condition on August 1, 2003" (Doc. #71, Ex. 42), the day before she was terminated, is

17   wholly inconsistent with her arguments before this Court that she was qualified for the DHS

18   position (as required for the failure to consider for hire claim) and that she could perform to

19   Winslow Hospital's legitimate expectations (as required for the termination claim).  Doc.

20   #70.  The EEOC contends the two positions are not inconsistent or irreconcilable.  Doc. #77.

21        Judicial estoppel is a discretionary doctrine, *Interstate Fire & Cas. Co., v.

22   Underwriters at Lloyd's, London*, 139 F.3d 1234, 1239 (9th Cir. 1998), based on "the

23   principle that a litigant may not benefit by making directly contradictory arguments regarding

24   the same dispute in different tribunals," *Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d

25   1187, 1193 (9th Cir. 2004).  In *Cleveland v. Policy Management Sys. Corp.*, 526 U.S. 795,

26   798 (1999), the Supreme Court held that a plaintiff who applies for and receives SSDI is not

27   automatically barred from pursuing a claim of employment discrimination under the

28   Americans with Disabilities Act ("ADA"), but to survive summary judgment the plaintiff

1 must resolve the inconsistency between the SSDI claim and the ADA claim.  The court stated

2 that the "explanation must be sufficient to warrant a reasonable juror's concluding that,

3 assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff

4 could nonetheless 'perform the essential functions' of her job[.]"  *Id.* at 807.[4]

5        Here, in explaining the apparent inconsistency between Ms. Renfro's statement on her

6 SSA application that she is "unable to work because of my disabling condition on August 1,

7 2003" (Doc. #71, Ex. 42) and her contention that she could perform to Winslow Hospital's

8 legitimate expectations and was qualified for its DHS position as of August 3, 2003, the

9 EEOC notes:

10         [Ms.] Renfro is entitled to SSDI benefits not because she is entirely unable to
           work, but because, having lost her employment at [Winslow Hospital], there
11         are no other jobs for which she is qualified. This is the same basis upon which
           the SSA found Renfro to be disabled: although Renfro is capable of
12         performing light work, because she is approaching retirement age and her
           skills are not transferrable outside her former job, she is disabled for SSDI
13         purposes.

14 Doc. #77 at 16.

15        This argument is fundamentally inconsistent with Ms. Renfro's claim before the SSA

16 that "I became *unable to work because of my disabling condition* on August 1, 2003."  Doc.

17 #71, Ex. 42 (emphasis added).  She did not say that she became unable to work because she

18 lost her employment and could not qualify for other jobs, nor did she say that she was

19 capable of performing light work.  She asserted, under penalty of perjury, that she was unable

20 to work because of a disabling condition.  *Id.*  The EEOC's attempted explanation of this

21 statement is not sufficient to warrant a reasonable juror's concluding that, assuming the truth

22 _____

23 [4] While the Supreme Court in *Cleveland* addressed judicial estoppel in the context of the
   ADA, its reasoning is relevant to this Court's application of the doctrine to Plaintiff's claims.
24 *See McClaren v. Morrison Management Specialists, Inc.*, 420 F.3d 457, 463 (5th Cir. 2005)
   ("Although the *Cleveland* Court did not address the application of judicial estoppel to an
25 ADEA or, as here, a state law age discrimination claim asserted after a plaintiff has filed for
   SSDI benefits, we find the reasoning employed therein persuasive to the precise issue before
26 this court and, for the first time, this Circuit."); *Detz v. Greiner Industries, Inc.*, 346 F.3d 109,
   117 (3rd Cir. 2003) ("While *Cleveland* only specifically addressed a conflict between SSDI
27 and ADA claims, the analysis is not limited in its application to cases involving those
   particular statutory and administrative schemes.").
28

of, or Ms. Renfro's good-faith belief in, her statement to the SSA, she "could nonetheless 'perform the essential functions' of her job[.]" *Cleveland*, 526 U.S. at 807.  If Ms. Renfro was unable to work because of her disabling condition, she could not have performed the essential functions of her previous job or the new DHS position.

At least one other federal court has rejected an argument virtually identical to the EEOC's in this case:

> Detz asserts that it was not his physical limitations, but rather the fact that Greiner laid him off, that rendered him "unable to work" as of November 27, 1996. He contends that he was, in fact, capable of continuing to perform his light duties in the Tool Room and, therefore, should be deemed "qualified" for that position for purposes of his claim under the ADEA. Although he failed to attribute his inability to work to his discharge on the SSDI Application, Detz would have us believe that the position he takes now is actually consistent with his prior assertions. We cannot agree.
>
> In short, Detz informed the SSA in a sworn statement that his disability prevented him from working – in other words, that he was physically *incapable* of performing his job.  Now he seeks to advance a position before this Court that rests on the assertion that he was discharged from a position that he was physically *capable* of performing.

*Detz v. Greiner Industries, Inc.*, 346 F.3d 109, 119-20 (3rd Cir. 2003) (emphases in original).

Because Ms. Renfro's sworn statement to the SSA is directly contrary to the position she takes in this case, and because Ms. Renfro benefitted from the prior statement by obtaining social security benefits, she will be judicially estopped from pursuing her claims in this Court.  The EEOC does not contend that it can assert claims on Ms. Renfro's behalf when she is judicially estopped from asserting them.  Judicial estoppel therefore bars its claim as well.

**IT IS ORDERED:**

1.     Defendant's motion for summary judgment (Doc. #70) is **granted**.

2.     The Clerk shall terminate this action.

DATED this 12th day of June, 2006.

David G. Campbell
United States District Judge